## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DEPAKOTE:<br><br>RHEALYN ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES, INC., and ABBVIE, INC.,<br><br>Defendants. | Case No. 12-CV-52-NJR-SCW<br><br>LEAD CONSOLIDATED CASE |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court are multiple Motions for Summary Judgment Based on Lack of Proximate Causation Evidence filed by Abbott.[1] The motions, responses, and replies are all substantively identical; thus, the Court issues one omnibus Order addressing the issue. References to the docket in this Memorandum and Order will be to Case No. 12-CV-53, unless otherwise specified. For the reasons set forth below, the Motions for Summary Judgment are denied with leave to refile.

### BACKGROUND

Plaintiffs in this mass action allege that they suffered serious birth defects as a direct result of exposure to Depakote.[2] The exposure for each Plaintiff is alleged to have occurred

---

[1] The Motions for Summary Judgment (collectively "Motions") are: Case No. 12-CV-53, Doc. 107; Case No. 12-CV-54, Doc. 95; Case No. 12-CV-55, Doc. 114; Case No. 12-CV-57, Doc. 113; Case No. 12-CV-57, Doc. 114; Case No. 12-CV-57, Doc. 117; Case No. 12-CV-57, Doc. 118; Case No. 12-CV-163, Doc. 85; Case No. 12-CV-1216, Doc. 55; Case No. 16-CV-307, Doc. 12; and Case No. 16-CV-463, Doc. 16.

[2] "Depakote" refers to Abbott's group of prescription drugs with the basic active ingredient valproic acid. Depakote is also sometimes referred to by the chemical names "valproic acid," "valproate," or "divalproex sodium." Depakote is an anti-epilepsy drug ("AED") that has been marketed by Abbott in the United States in some form since 1978.

*in utero* after his or her biological mother ingested Depakote during pregnancy. Plaintiffs contend that Defendants[3] failed to warn Plaintiffs' biological mothers of the real risk of birth defects, even though Defendants knew or reasonably should have known of the true risks.

The Court has jurisdiction over the Depakote mass action and all of the individual claims via diversity jurisdiction, including expanded diversity jurisdiction under 28 U.S.C. § 1332(d)(11)(B)(i), also known as the Class Action Fairness Act ("CAFA"). *See* (Case No. 12-CV-52, Doc. 667) (dismissing several Plaintiffs for lack of subject matter jurisdiction, as they failed to properly plead typical diversity jurisdiction or invoke CAFA).

Pursuant to Federal Rule of Civil Procedure 42, the Court ordered the consolidation of all of the Depakote cases. (Case No. 12-CV-52, Doc. 589). To properly manage the vast number of claims, discovery has been stayed in all of the Depakote cases until authorized by the Court. Common throughout all of the cases subject to the motions now being considered, the Court has partially lifted the discovery moratorium and ordered the deposition of the key prescribing physician. *See* (Case No. 12-CV-52, Docs. 485; 653). Based on the information gained from the limited discovery, Abbott identified each case where the prescribing physician is dead, cannot be located, or otherwise cannot be deposed.

Abbott contends that because the prescribing physician is dead, cannot be located, or otherwise cannot be deposed, Plaintiffs are unable to meet the burden of proving proximate causation. Plaintiffs assert that the current motions should be denied because (1) the heeding presumption shifts the burden onto Defendants; or (2) the limited discovery conducted renders the motions premature. The relevant factual basis of each of Abbott's Motions is identical and undisputed, i.e., the key prescribing physician is dead, cannot be located, or

---

[3] In 2013, Defendant Abbott Laboratories, Inc. split off part of its business, including the rights to Depakote, into a separate publicly traded company, Abbvie, Inc. Accordingly, Plaintiffs filing claims after 2013 have included both Abbott and Abbvie as defendants in the litigation.

otherwise cannot be deposed. As discussed below, the denial of the motions is based on a lack of completed relevant discovery, an issue common to each case.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party, who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986).

The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence . . . ." *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

Finally, summary judgment should not "be entered until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion." *Ill. State Emps. Union, Council 34, Am. Fed'n. of State, Cnty. &*

*Municipal Emps., AFL-CIO, an unincorporated labor org., et al. v. Lewis*, 473 F.2d 561, 565 (7th Cir. 1972); *see also Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) (summary judgment should not be granted when a "restrictive limitation" on discovery prevented the nonmoving party from "making the showing necessary to defeat summary judgment.").

## DISCUSSION

Abbott asserts that because the prescribing physician is dead, cannot be located, or otherwise cannot be deposed, Plaintiffs' claims must fail as a matter of law. Assuming without deciding that Abbott is correct,[4] the motions are premature. The limited discovery thus far authorized by the Court means that Plaintiffs have not "had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion." *Ill. State Emps. Union*, 473 F.2d 561, 565.

Abbott cites many cases in support of its assertion that an unavailable doctor requires summary judgment in defendants' favor. (Doc. 95, p. 4-5). Notably, however, each case cited by Abbott (with two exceptions) was in a different procedural posture than these cases, i.e., fact discovery concluded before the defendants filed for summary judgment. *E.g., Thompson v. Zimmer Inc.*, 2013 WL 5406628 (D. Minn. 2013); *In re Zyprexa Prod. Liab. Litig.*, 2009 WL 3596982 (E.D. N.Y. Oct. 20, 2009); *Gronniger v. Am. Home Prod. Corp.*, 2005 WL 3766685 (Pa. Com. Pl. Oct. 21, 2005); *Anderson v. Wyeth*, 2005 WL 1383174 (Pa. Com. Pl. June 7, 2005); *Leffler v. Am. Home Prod. Corp.*, 2005 WL 2999712 (Pa. Com. Pl. Oct. 20, 2005); *Adams v. Wyeth*, 2005 WL 1528656 (Pa. Com. Pl. June 13, 2005); *In re Mentor Corp. Obtape Transoburator Slive*

---

[4] Abbott asserts that (a) the proximate cause evidence must show that the prescribing physicians: (1) did not use Depakote just as it would have been used if Abbott had given additional birth defect warnings; (2) did not already believe, during the relevant time period in this case, that Depakote was the most teratogenic AED available and should only be used after alternative treatments had failed; and/or (3) otherwise "would have done something differently" had the prescribing physician(s) "heeded the warning[s]" advocated by Plaintiffs (Doc. 95, p. 8); *and* (b) that proximate cause cannot be shown through "expert witnesses' speculat[ion] about how, if at all, a prescribing physician would have acted differently had different warnings been provided" (Doc. 95, p. 6).

*Prod. Liab. Litig.*, 2016 WL 4611572 (M.D. Ga. Sept. 2, 2016); *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128 (D. Minn. 2011); and *Blyth v. GlaxoSmithKline*, 2010 WL 5676311 (Pa. Com. Pl. Dec. 14, 2010). The remaining two cases present either a factually distinguishable circumstance or the procedural posture of the case is unclear.[5]

Relevant discovery is clearly not closed in these cases. Indeed, until recently, discovery was not authorized without express approval of the Court. While Abbott contends that "Plaintiffs, as a matter of law, cannot meet their burden of production of proximate cause evidence" (Doc. 95, p. 9), such a conclusion is premature given the incredibly limited scope of discovery that has been authorized by the Court. The discovery moratorium imposed by the Court as a case management tool is a "restrictive limitation" on discovery that prevented the nonmoving party from "making the showing necessary to defeat summary judgment." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). While the path to survive summary judgment seems exceptionally narrow in these cases, at this juncture the Court cannot conclusively hold that additional discovery would be unlikely to produce facts needed to withstand summary judgment. *See, e.g., Netto v. Amtrak*, 863 F.2d 1210 (5th Cir. 1989).

## Conclusion

Accordingly, Defendants' Motions for Summary Judgment are **DENIED with leave to refile**. This Order is applicable to the following Motions: Case No. 12-CV-53, Doc. 107; Case No. 12-CV-54, Doc. 95; Case No. 12-CV-55, Doc. 114; Case No. 12-CV-57, Doc. 113; Case

---

[5] The case of *In re Accutane Litigation*, presents an unclear picture of the procedural posture of the litigation before summary judgment. 2016 WL 5958374 (N.J. Super. Ct. Law Div. Oct 12, 2016). Whereas, *Sauls v. Wyeth Pharms. Inc.*, 846 F. Supp. 2d 499 (D. S.C. 2012), presents a factually distinguishable circumstance from the instant cases. *Compare*, *Sauls* 846 F. Supp. 2d 499, 503 (D. S.C. 2012) ("[Plaintiff] acknowledges the lack of any affirmative evidence suggesting that Dr. Bennett would have altered his prescription decision if the hormone therapy medications were accompanied by an adequate warning.") *with* (Doc. 110-1) (The Declaration of Phillip Sampson, articulating factual and expert discovery that may result in sufficient causation evidence).

No. 12-CV-57, Doc. 114; Case No. 12-CV-57, Doc. 117; Case No. 12-CV-57, Doc. 118; Case No. 12-CV-163, Doc. 85; Case No. 12-CV-1216, Doc. 55; Case No. 16-CV-307, Doc. 12; and Case No. 16-CV-463, Doc. 16.

Each of the identified cases are cleared for fact and expert discovery related to causation. The parties shall have until **September 1, 2018** to complete the limited discovery.[6] Defendants' renewed summary judgment motions shall be due on or before **October 6, 2018**.

**IT IS SO ORDERED.**

**DATED:** September 28, 2017

**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[6] On February 16, 2017, the *Stampley* case was selected as part of the next batch of cases to be tried in the Depakote litigation. (Case No. 12-CV-52, Doc. 808, p. 6). Accordingly, full discovery shall proceed on or before the **December 29, 2017** deadline. Defendants shall have until **January 19, 2018** to file their renewed motion for summary judgment. Plaintiffs' response shall be due on or before **February 9, 2018**.